# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## NO. 16-2795

---

UNITED STATES OF AMERICA

v.

ASKIA WASHINGTON
a/k/a   SKI

Appellant

---

## APPENDIX TO BRIEF OF APPELLANT (VOL. 1 pages 1 through 56)

---

Appeal from the Judgement of Sentence entered on June 13, 2016 by the United States District Court for the Eastern District of Pennsylvania, Criminal No. 13-cr-00171-002.

---

BY: MARK S. GREENBERG, ESQUIRE
920 Lenmar Drive
Blue Bell, Pennsylvania 19422
(267) 253-7933
**ATTORNEY FOR APPELLANT**

# TABLE OF CONTENTS (Vol 1)

**PAGE**

Notice of Appeal.................................................................................................................1

Judgment in a Criminal Case.............................................................................................2

Opinion of District Court dated June 30, 2014 denying
    Defendant's Motion for Discovery and Evidentiary
    Hearing on Issue of Racial Profiling/Selective Prosecution................................................9

Order of District Court dated June 30, 2014 denying
    Defendant's Motion for Discovery and Evidentiary
    Hearing on Issue of Racial Profiling/Selective Prosecution........................................... 21

Order of District Court dated August 7, 2014 denying
    Defendant's Motion for Reconsideration............................................................22

Superseding Opinion of District Court dated May 3, 2016
    denying Defendant's Motion for a New Trial...............................................27

Order of District Court dated April 12, 2016
    denying Defendant's Motion for a New Trial...............................................56

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA     : :     CRIMINAL ACTION

      v.                  : :

ASKIA WASHINGTON        : :     NUMBER 13-171-02


## NOTICE OF APPEAL


Notice is hereby given that ASKIA WASHINGTON appeals to the United States Court of Appeals for the Third Circuit from the Judgment of Sentence entered on June 14, 2016 by the Honorable Joel Slomsky.


               _____/S/_____

               MARK S. GREENBERG, ESQUIRE

               Attorney for Defendant


Dated: June 14, 2016

ABB-1

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1    Case 2:13-cr-00171-JHS   Document 287   Filed 06/13/16   Page 1 of 7
Case: 16-2795   Document: 003112401110   Page: 4   Date Filed: 09/07/2016

# UNITED STATES DISTRICT COURT

EASTERN _____ District of _____ PENNSYLVANIA

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| V. | |
| ASKIA WASHINGTON | Case Number:   DPAE2:13CR000171-002 |
| a/k/a "SKI" | USM Number:   69032-066 |
| | MARK S. GREENBERG, ESQ. |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

X was found guilty on count(s)   1 THROUGH 4 _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:1951(a) | CONSPIRACY TO COMMIT ROBBERY WHICH INTERFERES WITH INTERSTATE COMMERCE. | 03/15/2013 | 1 |
| 18:1951(a); 18:2 | ATTEMPTED ROBBERY WHICH INTERFERES WITH INTERSTATE COMMERCE; AIDING AND ABETTING. | 03/15/2013 | 2 |

    The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

X The defendant has been found not guilty on count(s)   **FIVE (5)**

X Count(s)   **SIX (6)** _____ X is   ☐ are  dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

JUNE 13, 2016
_____
Date of Imposition of Judgment

*Joel Slomsky*
_____
Signature of Judge

CERTIFIED COPIES TO:

DEFENDANT

MARK S. GREENBERG, ESQ., ATTY. FOR DEFENDANT

ERIC B. HENSON,  AUSA

FLU

PROBATION (2)  MEGAN MAIER

PRETRIAL (2)

U.S. MARSHAL (2)

FISCAL DEPARTMENT

JOEL H. SLOMSKY, USDC JUDGE
_____
Name and Title of Judge

JUNE 13, 2016
_____
Date

APP. 2

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1A    Case: 2:13-cr-00171-JHS   Document 287   Filed 06/13/16   Page 2 of 7
Case: 16-2795   Document: 003112401110   Page: 5   Date Filed: 09/07/2016
Judgment—Page    2    of    7

| DEFENDANT: | ASKIA WASHINGTON |
|---|---|
| CASE NUMBER: | DPAE2:13CR000171-002 |

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21:846 | CONSPIRACY TO POSSESS WITH THE INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF COCAINE. | 03/15/2013 | 3 |
| 21:846; 18:2 | ATTEMPTED POSSESSION WITH INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF COCAINE; AIDING AND ABETTING. | 03/15/2013 | 4 |

App - 3

DEFENDANT:        ASKIA WASHINGTON
CASE NUMBER:      DPAE2:13CR000171-002

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:    **TWO HUNDRED SIXTY-FOUR (264) MONTHS.**
THIS TERM CONSISTS OF TERMS OF 24 MONTHS ON EACH OF COUNTS 1 AND 2, **TO BE SERVED
CONCURRENTLY TO EACH OTHER**, AND A TERM OF 240 MONTHS ON COUNTS 3 AND 4, **TO BE SERVED
CONCURRENTLY TO EACH OTHER BUT CONSECUTIVELY** TO THE TERMS IMPOSED ON COUNTS 1 & 2.
**TOTAL TERM OF IMPRISONMENT IS 264 MONTHS.**

X  The court makes the following recommendations to the Bureau of Prisons: DEFENDANT PARTICIPATE IN THE PRISON
WORK PROGRAM & PROVIDE A MINIMUM PAYMENT OF $25.00 PER QUARTER TOWARDS THE  FINE.
DEFENDANT BE AFFORDED MENTAL HEALTH & DRUG COUNSELING/TREATMENT PROGRAMS & PARTICIPATE
IN EDUCATIONAL & VOCATIONAL TRAINING PROGRAMS.  DEFENDANT BE CONFINED IN A FEDERAL
INSTITUTION AS CLOSE AS POSSIBLE TO HIS HOME IN PHILADELPHIA, PA.

X  The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐    at _____   ☐ a.m.   ☐ p.m.   on _____ .

☐    as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐    before 2 p.m. on _____ .

☐    as notified by the United States Marshal.

☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
        Sheet 3 — Supervised Release

Judgment—Page    4    of    7   

DEFENDANT:     ASKIA WASHINGTON
CASE NUMBER:  DPAE2:13CR000171-002

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    **TEN (10) YEARS.**

THIS TERM CONSISTS OF TERMS OF 3 YEARS ON EACH OF COUNTS 1 AND 2, AND TERMS OF 10 YEARS ON EACH OF COUNTS 3 AND 4, ALL SUCH TERMS **TO BE SERVED CONCURRENTLY TO EACH OTHER.**

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

X    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if

☐    The defendant shall register with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the Probation Officer, the Bureau of Prisons, or any state offender registration agency in which he or she resides, works, is a student, or ws convicted of a qualifying offense. (Check, if applicable).

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

App 5

Case 2:13-cr-00171-JHS    Document 287    Filed 06/13/16    Page 5 of 7

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___5___ of ___7___

DEFENDANT:        ASKIA WASHINGTON
CASE NUMBER:      DPAE2:13CR000171-002

## ADDITIONAL SUPERVISED RELEASE TERMS

WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE BUREAU OF PRISONS, THE DEFENDANT SHALL REPORT IN PERSON TO THE PROBATION OFFICE IN THE DISTRICT TO WHICH THE DEFENDANT IS RELEASED.

WHILE ON SUPERVISED RELEASE, THE DEFENDANT SHALL NOT COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME, SHALL BE PROHIBITED FROM POSSESSING A FIREARM OR OTHER DANGEROUS DEVICE, SHALL NOT POSSESS AN ILLEGAL CONTROLLED SUBSTANCE AND SHALL COMPLY WITH THE OTHER STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS COURT. THE DEFENDANT MUST SUBMIT TO ONE DRUG TEST WITHIN 15 DAYS OF COMMENCEMENT OF SUPERVISED RELEASE AND AT LEAST TWO TESTS THEREAFTER AS DETERMINED BY THE PROBATION OFFICER.

THE DEFENDANT SHALL PROVIDE THE U.S. PROBATION OFFICE WITH FULL DISCLOSURE OF HIS FINANCIAL RECORDS TO INCLUDE YEARLY INCOME TAX RETURNS UPON THE REQUEST OF THE U.S. PROBATION OFFICE. THE DEFENDANT SHALL COOPERATE WITH THE PROBATION OFFICER IN THE INVESTIGATION OF HIS FINANCIAL DEALINGS AND SHALL PROVIDE TRUTHFUL MONTHLY STATEMENTS OF HIS INCOME.

THE DEFENDANT IS PROHIBITED FROM INCURRING ANY NEW CREDIT CHARGES OR OPENING ADDITIONAL LINES OF CREDIT WITHOUT THE APPROVAL OF THE PROBATION OFFICER, UNLESS THE DEFENDANT IS IN COMPLIANCE WITH A PAYMENT SCHEDULE FOR FINE OBLIGATION. THE DEFENDANT SHALL NOT ENCUMBER OR LIQUIDATE INTEREST IN ANY ASSETS UNLESS IT IS IN DIRECT SERVICE OF THE FINE OBLIGATION OR OTHERWISE HAS THE EXPRESS APPROVAL OF THE COURT.

THE DEFENDANT SHALL COOPERATE IN THE COLLECTION OF DNA AS DIRECTED BY THE PROBATION OFFICER.

IN THE EVENT THE FINE IS NOT PAID PRIOR TO THE COMMENCEMENT OF SUPERVISION, THE DEFENDANT SHALL SATISFY THE AMOUNT DUE IN MONTHLY INSTALLMENTS OF NOT LESS THAN $50.00, TO COMMENCE 30 DAYS AFTER RELEASE FROM CONFINEMENT.

THE DEFENDANT SHALL NOTIFY THE UNITED STATES ATTORNEY FOR THE DISTRICT WITHIN 30 DAYS OF ANY CHANGE OF MAILING ADDRESS OR RESIDENCE THAT OCCURS WHILE ANY PORTION OF THE FINE REMAINS UNPAID.

App. 6

DEFENDANT:         ASKIA WASHINGTON
CASE NUMBER:       DPAE2:13CR000171-002

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  400.00 | $  1,500.00 | $ |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |

| **TOTALS** | $  0 | $  0 |
|---|---|---|

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   X  the interest requirement is waived for the    X  fine   ☐  restitution.

   ☐  the interest requirement for the    ☐  fine   ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

App. 7

DEFENDANT:        ASKIA WASHINGTON
CASE NUMBER:   DPAE2:13CR000171-002

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A** ☐   Lump sum payment of $ _____ due immediately, balance due

      ☐   not later than _____ , or
      ☐   in accordance    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B** X   Payment to begin immediately (may be combined with   ☐ C,    ☐ D, or   X F below); or

**C** ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E** ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** X   Special instructions regarding the payment of criminal monetary penalties:

    IN THE EVENT THE FINE IS NOT PAID PRIOR TO THE COMMENCEMENT OF SUPERVISION, THE DEFENDANT SHALL SATISFY THE AMOUNT DUE IN MONTHLY INSTALLMENTS OF NOT LESS THAN $50.00, TO COMMENCE 30 DAYS AFTER RELEASE FROM CONFINEMENT.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

X   The defendant shall forfeit the defendant's interest in the following property to the United States:
    THE FIREARMS & AMMUNITION INVOLVED IN THE COMMISSION OF THESE OFFENSES, THAT IS, A HASKELL, MODEL JHP45, 45 CALIBER SEMI-AUTOMATIC PISTOL, SERIAL NUMBER X4134949, LOADED WITH NINE ROUNDS OF AMMUNITION; & A CHARTER ARMS, MODEL POLICE BULLDOG, .38 CALIBER REVOLVER WITH OBLITERATED SERIAL NUMBER, LOADED WITH SIX LIVE ROUNDS OF AMMUNITION.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

App 8

Case 2:13-cr-00171-JHS    Document 135    Filed 06/30/14    Page 1 of 12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ASKIA WASHINGTON,

               Defendant.

CRIMINAL ACTION
NO. 13-171-2

**OPINION**

Slomsky, J.                                                      June 30, 2014

## I.    INTRODUCTION

Before the Court is Defendant's Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution.  (Doc. No. 126.)  In the Motion, Askia Washington ("Defendant" or "Washington") asserts that the Philadelphia District Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the United States Attorney's Office for the Eastern District of Pennsylvania have a discriminatory law enforcement policy or practice of targeting African American and Latino individuals for sting operations involving robberies of phony drug stash houses.  (Id. at ¶ 1.)  Defendant believes that he was arrested and indicted as a result of one of these allegedly discriminatory sting operations.  (Id.)

In his Motion, Defendant seeks disclosure of records pertaining to similar sting operations that took place in the Eastern District of Pennsylvania and the District of New Jersey from 2009 to the present.  (Id. at ¶ 2.)  The Government filed a Response in Opposition.  (Doc. No. 127.)  On May 13, 2014, the Court held a hearing on the Motion, and it is ripe for disposition.[1]

---

[1] In rendering this Opinion, the Court has considered the following: Defendant's pro se letter

App. 9

Case 2:13-cr-00171-JHS    Document 135    Filed 06/30/14    Page 2 of 12

## II.    BACKGROUND

In this case, Defendant is charged with the following crimes:

- Count I – conspiracy to commit attempted robbery which interferes with interstate commerce, in violation of the Hobbs Act, 18 U.S.C. §§ 1951(a), (b)(1) and (b)(3);

- Count II – attempt to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1951(a);

- Count III – conspiracy to attempt to possess a controlled substance, cocaine, with the intent to distribute, in violation of 21 U.S.C. § 846;

- Count IV – attempt to possess, and aiding and abetting the attempt to possess, a controlled substance, cocaine, with the intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 846;

- Count V – knowingly carrying, and aiding and abetting the carrying of, a firearm during and in relation to a crime of violence and to a drug trafficking crime, in violation of 18 U.S.C. § 2 and 18 U.S.C. §§ 924(c);

- Count VI – being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

(Doc. No. 24.)

On March 15, 2013, Defendant and three other men were arrested in an ATF sting operation as they attempted to commit a home invasion and robbery of what they believed to be

---

with attached exhibits (Doc. No. 121), Defendant's Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution (Doc. No. 126), the Government's Response in Opposition (Doc. No. 127), the arguments made by counsel for the parties at a hearing on the Motion held on May 13, 2014, and supplemental documents provided by Defendant at the hearing (Doc. No. 130).



Case 2:13-cr-00171-JHS    Document 135    Filed 06/30/14    Page 3 of 12

a cocaine stash house in Philadelphia. (Doc. No. 127 at 1.) On April 11, 2013, all four

defendants were indicted, and three have entered guilty pleas. (Id.) Defendant Washington

intends to pursue a jury trial. (Id.)

On April 27, 2014, Defendant filed the Motion for Discovery and Evidentiary Hearing on

the Issue of Racial Profiling/Selective Prosecution. (Doc. No. 126.) According to Defendant, it

has become common practice for federal agents and prosecutors in Philadelphia to create

fictitious plans to commit armed robberies of homes and to lead defendants like him to falsely

believe that the homes contain illegal drugs. (Id. at ¶ 1.) As part of these sting operations, a

confidential informant and undercover ATF agent purport to have knowledge of lightly guarded

stash houses where large quantities of drugs are stored. (Id.) In this case, Washington's co-

defendant, Dwight Berry, met with a confidential informant and expressed an interest in robbing

a cocaine stash house. Berry subsequently approached Washington about getting involved.

(N.T. May 13, 2014 at 19:9-12.) Defendant alleges that the Government routinely targets

African Americans and Latinos for these sting operations and that his arrest and indictment

resulted from this practice of racial profiling and selective prosecution. (Id.)

In his Motion for Discovery, Defendant requests disclosure of all phony stash house

robbery cases involving confidential informants and undercover agents within the Eastern

District of Pennsylvania and the District of New Jersey from 2009 to the present. (Id. at ¶ 2.)

Defendant seeks this information in order to prepare a motion to dismiss the indictment on the

basis of racial profiling and/or selective prosecution of racial minorities by the ATF Office in

Philadelphia, in conjunction with the local U.S. Attorney's Office. (Id. at 1.) The Government

opposes the Motion and argues that Defendant's discovery request should be denied. (Doc. No.

127.) For reasons that follow, the Court will deny Defendant's Motion.



App. 11

## III.    ANALYSIS

In his Motion, Defendant requests an evidentiary hearing on the issue of racial profiling and/or selective prosecution with respect to sting operations involving fictitious stash house robberies, as well as the production of the following discovery items:

- A list by case name, number and the race of each defendant of all phony stash house robbery cases brought by the United States Attorney's Office for the Eastern District of Pennsylvania [and the District of New Jersey] from 2009 to the present based on investigations conducted by ATF or any other federal law enforcement agency, and any documents that show that the information stated in paragraph 4 [of the Motion] is incorrect.

- For each such case listed in response to section "a" above, a statement of prior [c]riminal contact each investigating federal agency had with each defendant prior to initiating every fictitious stash house robbery.  (If all such information for a particular case is contained in the criminal complaint, provision of a copy of the complaint would be a sufficient response).

- The statutory or regulatory authority for ATF or any other federal law enforcement agency to instigate and/or pursue fictitious stash house robbery cases involving any pretext of illegal drugs (e.g. heroin, cocaine, crack, ecstasy, methamphetamine, etc.), or any decision by any federal agency, the Justice Department or the White House to authorize ATF or any other federal law enforcement agency to pursue such cases in the Eastern District of Pennsylvania [and the District of New Jersey].

- All national and Philadelphia Field Office ATF manuals, circulars, field notes, correspondence or any other material which discuss "stings", "reverse stings", "phony stash house rip-offs or robberies" or entrapment operations, including protocols and/or directions to agents and to confidential informants regarding how to conduct such operations, how to determine which persons to pursue as potential targets or ultimate defendants, how to ensure that the targets do not seek to quit or leave before an arrest can be made, and how to ensure that the agents are not targeting persons for such operations on the basis of their race, color, ancestry or national origin.

- All documents that contain information on whether and how supervisors and managers of the Philadelphia Area ATF and other federal law enforcement agencies involved in phony stash house robbery cases sought to determine whether or not its agents and informants were targeting persons on the basis of their race, color, ancestry or national origin for these phony stash house robbery cases, and what actions did the Philadelphia Area ATF (i.e., operating in the Eastern District of Pennsylvania [and the District of New Jersey]) or other federal

4

App. 12

Case 2:13-cr-00171-JHS    Document 135    Filed 06/30/14    Page 5 of 12

law enforcement agency supervisors and managers took [sic] to ensure that agents
and/or informants were not targeting persons for such operations on the basis of
their race, color, ancestry or national origin.

- The number of paid and unpaid confidential informants utilized by the
  Philadelphia Area ATF from 2009 to the present and the number of those
  confidential informants who had access to non-African American or persons of
  non-African descent who could be targeted for fictitious stash house robbery
  cases.

- The factual basis in each case cited in paragraph 4 and cases produced in response
  to the above and the cases produced in response to paragraph 10a regarding
  decisions made to pursue or initiate an investigation against any of the individuals
  listed as defendants in these cases.

- All documents containing instructions given to Assistant United States Attorneys
  since 2009 regarding the responsibilities of Assistant United States Attorney to
  ensure that defendants in cases brought by the Office of the United States
  Attorney for the Eastern District of Pennsylvania [and the District of New Jersey]
  have not been targeted due to their race, color, ancestry or national origin and
  specifically that those persons who are defendants in phony stash house cases in
  which ATF was the investigatory agency have not been targeted due to their race,
  color, ancestry or national origin and that such prosecutions have not been
  brought with any discriminatory intent on the basis of the defendant's race, color,
  ancestry or national origin.

- All documents that contain information . . . regarding all duties and
  responsibilities of Assistant United States Attorneys for the Eastern District of
  Pennsylvania [and the District of New Jersey] to ensure and/or check to determine
  that defendants . . . have not been targeted due to their race, color, ancestry or
  national origin and . . . that [phony stash house cases] have not been brought with
  any discriminatory intent on the basis of the defendant's race, color, ancestry or
  national origin.

(Doc. No. 126 at ¶ 10.)

The Supreme Court's decision in United States v. Armstrong, 517 U.S. 456 (1996)

articulates the standard that Defendant must meet in order to obtain the discovery materials he

believes will substantiate his selective enforcement claim.[2]  Given the "broad discretion" that

---

[2] While Defendant refers to "selective prosecution" in his Motion, he actually complains of racial
profiling or "selective law enforcement." However, "the same analysis governs both types of
claims: a defendant seeking discovery on a selective enforcement claim must meet the same

App. 13

Case 2:13-cr-00171-JHS   Document 135   Filed 06/30/14   Page 6 of 12

United States Attorneys retain to enforce federal criminal laws, "[t]he presumption of regularity

supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts

presume that they have properly discharged their official duties." Id. at 464 (internal quotations

omitted). However, the Supreme Court explained that:

> Of course, a prosecutor's discretion is "subject to constitutional constraints." One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification." A defendant may demonstrate that the administration of a criminal law is "directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law.

Id. at 464-65 (internal quotations omitted). Due to a "concern not to unnecessarily impair the

performance of a core executive constitutional function," a criminal defendant "must present

'clear evidence to the contrary'" in order to overcome the presumption that a prosecutor has not

violated equal protection. Id. at 465.

According to the Supreme Court, "[t]he justifications for a rigorous standard for the

elements of a selective-prosecution claim thus require a correspondingly rigorous standard for

discovery in aid of such a claim." Id. at 468. The Court in Armstrong decided what is necessary

to overcome "the presumption of regularity" that supports prosecutorial decisions:

> The claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted.

Id. at 465-66 (internal quotations omitted). This requires a criminal defendant to make "a

credible showing of different treatment of similarly situated persons." Id. at 470.

---

'ordinary equal protection standards' that Armstrong outlines for selective prosecution claims." United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002).

6



App. 14

Case 2:13-cr-00171-JHS   Document 135   Filed 06/30/14   Page 7 of 12

Following <u>Armstrong</u>, the Supreme Court further explained that "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." <u>United States v. Bass</u>, 536 U.S. 862, 864 (2002). In <u>Bass</u>, rather than submit evidence that similarly situated persons were treated differently, the defendant presented nationwide statistics that demonstrated that the United States charges blacks with a death-eligible offense more than twice as often as it charges whites and that the United States enters into plea bargains more frequently with whites than it does with blacks. <u>Id.</u> at 863. The Court held that these "raw statistics" were insufficient to establish a discriminatory effect under <u>Armstrong</u>. Likewise, Defendant in this case cannot meet <u>Armstrong's</u> "rigorous standard for discovery."

In support of his discovery motion, Defendant asserts that from 2009 to the present, the Government has brought at least four phony stash house robbery cases against twenty individuals, all of whom are African American.[3] (Doc. No. 126 at ¶ 5.) Defendant also submitted a pro se filing which includes the following: various news articles discussing the Government's use of these types of sting operations; filings in phony stash house robbery cases from outside the Third Circuit; and Department of Justice policy guidelines regarding the impermissibility of racial profiling by federal law enforcement agencies. (Doc. No. 121.) The Government argues that this evidence is insufficient to meet the <u>Armstrong</u> standard, and Defendant is therefore not entitled to discovery. (Doc. No. 127.) The Court agrees.

---

[3] The cases cited by Defendant are: <u>United States v. Weems & Smith</u>, 09-cr-708 (E.D. Pa.) (Slomsky, J.); <u>United States v. Bryant, et al.</u>, 12-cr-346 (E.D. Pa.) (Dalzell, J.); <u>United States v. Whitfield, et al.</u>, 12-cr-418 (E.D. Pa.) (Sanchez, J.); <u>United States v. Berry, et al.</u>, 13-cr-171 (E.D. Pa.) (Slomsky, J.).

7

App. 15

Case 2:13-cr-00171-JHS   Document 135   Filed 06/30/14   Page 8 of 12

Phony stash house robbery cases first received national attention after <u>USA Today</u> published an in-depth report about this type of sting operation in June 2013.[4]  Shortly thereafter, a federal judge in the Northern District of Illinois granted discovery motions in two of these cases, after finding that the defendants had made a strong showing of potential Government bias. <u>United States v. Brown, et al.</u>, 12-cr-632, Doc. No. 153 (N.D. Ill. July 31, 2013); <u>United States v. Williams, et al.</u>, 12-cr-887, Doc. No. 70 (N.D. Ill. July 31, 2013).  In reaching this decision, however, the court did not analyze the issue under the applicable <u>Armstrong</u> standard.  It was sufficient for the court in these two cases that since 2011, only minorities had been charged in phony stash house robbery cases within that district.  <u>Id.</u>

Another judge in the same district granted the defendants' discovery motion because "[a]n examination of the limited information available to Defendants indicates that since 2006, the prosecution in this District has brought at least twenty purported phony stash house cases, with the overwhelming majority of the defendants named being individuals of color." <u>United States v. Davis, et al.</u>, 13-cr-63, Doc. No. 124 (N.D. Ill. Oct. 30, 2013).[5]  The court reasoned that this evidence was sufficient to make a threshold showing that the Government declined to prosecute similarly situated suspects of other races.  <u>Id.</u>  In granting the discovery motion, the court did not address whether the defendants had satisfied the second prong of <u>Armstrong</u> by demonstrating that the sting operation was motivated by a discriminatory purpose.

In another phony stash house robbery case, a district court judge largely denied the defendant's discovery request after conducting a full <u>Armstrong</u> analysis.  <u>United States v.</u>

---

[4] Brad Heath, <u>ATF uses fake drugs, big bucks to snare suspects</u>, USA Today, June 28, 2013, available at http://www.usatoday.com/story/news/nation/2013/06/27/atf-stash-houses-sting-usatoday-investigation/2457109/.

[5] The Government filed an interlocutory appeal which is pending before the Seventh Circuit.

APP. 16

Alexander, No. 11-148-1, 2013 WL 6491476 (N.D. Ill. Dec. 10, 2013). The court found that the defendant failed to make a credible showing of discriminatory effect and also failed to provide evidence of discriminatory intent. Id. at *4-5. In determining that the defendant did not make a credible showing of a discriminatory effect, the court explained:

> Alexander's analysis of the 17 cases he studied shows that approximately 75% of the defendants prosecuted in those cases are African American. The data he offers, however, says nothing about whether the ATF or the United States Attorney chose not to conduct or prosecute stash-house robbery sting cases for similarly situated individuals of another race. The Supreme Court and the Seventh Circuit have repeatedly found that this type of evidence fails to fulfill the discriminatory effect prong of the Armstrong test.

Id. at *4 (citations omitted). Although the defendant failed to meet Armstrong's rigorous standard, the district court judge nevertheless ordered the Government to produce limited discovery in the case. Id. at *5. Following this approach, a federal judge in the District of Maryland similarly ordered the production of limited discovery, despite finding that the defendants had failed to make the necessary showing of discriminatory effect and discriminatory intent under Armstrong. United States v. Hare, No. 13-650, 2014 WL 1573545 (D. Md. Apr. 17, 2014).

As noted above, Armstrong sets forth the criteria required for obtaining discovery on selective enforcement. The Court is bound to follow Armstrong and may not deviate from the Supreme Court's standard. The decisions listed above are not persuasive for the following reasons. In two cases, the district court did not conduct an Armstrong analysis. In another case, the district court did not complete a full inquiry and only considered the first prong of Armstrong. Some of the courts simply relied on "raw statistics regarding overall charges," and two district courts ordered discovery, despite finding that defendants failed to satisfy Armstrong's rigorous standard.



Case 2:13-cr-00171-JHS   Document 135   Filed 06/30/14   Page 10 of 12

Unlike the Northern District of Illinois, this Court has not had the occasion to rule in a phony stash house robbery case on a defendant's pre-trial motion seeking discovery to support a selective enforcement claim. On June 27, 2014, however, another judge of this Court issued an Opinion in United States v. Whitfield, et al., 12-cr-418, Doc. No. 377 (E.D. Pa. June 27, 2014), in which the defendants sought post-trial discovery on the issue of selective enforcement. Although the discovery motion was untimely filed after the defendants were convicted, the Court still held that the defendants were not entitled to discovery because they could not satisfy the requirements of Armstrong. There, the defendants identified six phony stash house prosecutions pursued in this district since 2009 in which all of the defendants were African American. The Court held:

> Because Defendants' data focuses only on the racial composition of those targeted in phony stash house robbery stings and says nothing about the existence of similarly situated individuals of another race who could have been targeted but were not, the data is insufficient to satisfy Defendants' burden to produce some evidence of discriminatory effect.

Whitfield, 12-cr-418, Doc. No. 377 at 17 (citations omitted). Defendant Washington's present discovery motion fails for the same reason.

Here, the only evidence Defendant submitted relevant to sting operations in this district is the fact that since 2009, the Government has brought at least four phony stash house robbery cases, in which only African Americans were charged. (Doc. No. 126 at ¶ 5.) The Supreme Court has clarified that "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." Bass, 536 U.S. at 864. As the district court held in Alexander, "this type of evidence fails to fulfill the discriminatory effect prong of the Armstrong test." 2013 WL 6491476 at *4.

App. 18

Case 2:13-cr-00171-JHS   Document 135   Filed 06/30/14   Page 11 of 12

Furthermore, the defense has acknowledged that it cannot satisfy <u>Armstrong's</u> first prong.

On May 13, 2014, the Court held a hearing, at which the following exchange took place:

| | |
|---|---|
| THE COURT: | All right.  Now, I have to follow the law, as sensitive as these matters are.  And in <u>Armstrong</u>, you have to present evidence that similarly situated persons were treated differently.  In other words, it's not enough under <u>Armstrong</u> or even <u>Bass</u> or other cases to present a—a list of any number of cases in which the defendants were African American and were subject to these kinds of sting operations.  You have to go beyond that in order to get discovery, and you have to show that other similarly situated persons who were not African Americans were treated differently.  And what evidence of that is there in the record? |
| [DEFENSE COUNSEL]: | In this record, Your Honor, there—there—there is none.  There's no evidence in this record on this case other than what we have regarding the affidavits that were submitted; the indictment, of course; and the tapes that we have from, you know, these recordings.  The problem, Your Honor, is that my client, like many of the other cases that we've cited and are relying on for a persuasive impact, were discriminated against, if not intentionally, Your Honor, by practice and policy. |

(N.T. May 13, 2014 at 17:19-18:19.)

Without presenting evidence that similarly situated individuals were not targeted for these

sting operations, Defendant cannot meet <u>Armstrong's</u> rigorous standard to obtain discovery.

Moreover, <u>Armstrong</u> also requires a showing of a discriminatory purpose.  It is not sufficient for

Defendant to allege generally that he may have been unintentionally discriminated against by a

Government practice or policy.[6]  "In our criminal justice system, the Government retains 'broad

discretion' as to whom to prosecute" and "the decision to prosecute is particularly ill-suited to

---

[6] It is also worth noting that in this case, neither the confidential informant nor the ATF agent initiated contact with Defendant.  Rather, Washington's co-defendant, Dwight Berry, recruited Washington to rob the alleged stash house.  (N.T. May 13, 2014 at 19:9-12.)

11

App. 19

judicial review." <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985) (citations omitted).

Therefore, it is only under limited circumstances, as annunciated in <u>Armstrong</u>, that a court will

afford criminal defendants an opportunity to challenge the Government's law enforcement or

prosecutorial decisions. This case is not one of those situations. Defendant has not

demonstrated that the Government's use of fictitious stash house sting operations has both a

discriminatory effect and a discriminatory purpose. Thus, he cannot meet <u>Armstrong's</u> rigorous

burden and is not entitled to discovery.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's Motion for Discovery and

Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution. An appropriate

Order follows.

App. 20

Case 2:13-cr-00171-JHS   Document 136   Filed 06/30/14   Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ASKIA WASHINGTON,

Defendant.

CRIMINAL ACTION
NO. 13-171-2

## ORDER

**AND NOW**, this 30th day of June 2014, upon consideration of Defendant's pro se letter with attached exhibits (Doc. No. 121), Defendant's Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution (Doc. No. 126), the Government's Response in Opposition (Doc. No. 127), the arguments made by counsel for the parties at a hearing on the Motion held on May 13, 2014, supplemental documents provided by Defendant at the hearing (Doc. No. 130), and in accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1.     Defendant's Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution (Doc. No. 126) is **DENIED**.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

ARP. 21

Case 2:13-cr-00171-JHS   Document 149   Filed 08/07/14   Page 1 of 5

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

ASKIA WASHINGTON,

Defendant.

CRIMINAL ACTION
NO. 13-171-2

## ORDER

**AND NOW**, this 7th day of August 2014, upon consideration of Defendant's Motion for

Reconsideration (Doc. No. 137), the Government's Response in Opposition (Doc. No. 146), and

Defendant's Reply in Further Support of the Motion (Doc. No. 147), it is **ORDERED** that

Defendant's Motion for Reconsideration (Doc. No. 137) is **DENIED**.[1]

---

[1] On March 15, 2013, Askia Washington ("Defendant") and three other men were arrested in a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") sting operation, as they attempted to commit a home invasion and robbery of what they believed to be a cocaine stash house in Philadelphia. (Doc. No. 127 at 1.) On April 11, 2013, all four defendants were indicted, and three have entered guilty pleas. (Id.) Defendant Washington intends to pursue a jury trial. (Id.)

On April 27, 2014, Defendant filed a counseled Motion for Discovery and Evidentiary Hearing on the Issue of Racial Profiling/Selective Prosecution. (Doc. No. 126.) In his Motion for Discovery, Defendant requested disclosure of all phony stash house robbery cases involving confidential informants and undercover agents within the Eastern District of Pennsylvania and the District of New Jersey from 2009 to the present. (Id.) The Motion specifically incorporated a letter and exhibits that Defendant filed pro se on March 14, 2014. (Id. at 1.) The Government opposed the Motion. (Doc. No. 127.) A hearing on the Motion was held on May 13, 2014, at which Defendant was present.

On June 30, 2014, the Court issued an Opinion and Order, denying Defendant's Motion for Discovery. (Doc. Nos. 135-36.) Shortly thereafter, on July 8, 2014, the Court received a pro se Motion for Reconsideration of its June 30, 2014 Opinion and Order. (Doc. No. 134.) The Government opposes the Motion (Doc. No. 146), and the Motion is now ripe for disposition.

As an initial matter, Defendant is represented by counsel and does not have a right to "hybrid representation." United States v. Turner, 677 F.3d 570, 578 (3d Cir. 2012) (quoting McKaskle v. Wiggins, 465 U.S. 168, 183 (1984)). Despite this "longstanding prohibition on 'hybrid

APP 22

representation,'" id., Defendant has submitted various pro se documents, including the present Motion. (See Doc. Nos. 121, 134, 137, 147.) As he notes in his supporting brief, Defendant may not file pro se documents while he is represented by counsel. (Doc. No. 137 at 12); see also, United States v. Turner, 677 F.3d 570, 578 (3d Cir. 2012) ("In light of the foregoing, we now hold that, except in cases governed by Anders, parties represented by counsel may not file pro se briefs."). Id. at 579. Defendant is represented by counsel, and therefore, this Court need not consider the present Motion, which was filed pro se. See United States v. D'Amario, 328 F. App'x 763, 764 (3d Cir. 2009) ("[A] district court is not obligated to consider pro se motions by represented litigants."). Nonetheless, the Court has reviewed Defendant's pro se Motion for Reconsideration. For reasons that follow, the Motion will be denied.

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quotation omitted)). Thus, a proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)). However, "[a] motion for reconsideration 'addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.'" In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)). Therefore, "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration." Progressive Cas. Ins. Co. v. PNC Bank, N.A., 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999). Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." In re Asbestos Products Liab. Litig. (No. VI), 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011) (quoting Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)).

In his Motion for Reconsideration, Defendant makes the following arguments: 1) The Court should grant the Motion in order to correct a clear error of law or fact, or to prevent a manifest injustice; 2) The Court erred by applying the rigorous standard of United States v. Armstrong, 517 U.S. 456 (1996), rather than applying a standard used by certain Circuit Courts; 3) The Court violated the Sixth Amendment by waiving Defendant's right to counsel; and 4) The Court re-characterized Defendant's selective prosecution claim and rendered a decision without giving Defendant an opportunity to have his argument decided as submitted. (Id. at A.) The Court will briefly address each issue.

Defendant's first argument, that the Court committed a clear error of law or fact and caused a manifest injustice, is simply a summary of the standard for granting a motion for reconsideration. (See id. at 1.) The substance of this claim actually appears in Defendant's second argument. There, he contends that the Court should not have applied a rigorous standard under Armstrong because Defendant was only required to present "some evidence" of the sting operations' discriminatory effect. In Armstrong, the Supreme Court explained that "[t]he justifications for a

2

APP. 23

Case 2:13-cr-00171-JHS   Document 149   Filed 08/07/14   Page 3 of 5

rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." Armstrong, 517 U.S. at 468. Therefore, the Court held that defendants seeking discovery in aid of a selective prosecution claim must demonstrate that the challenged federal prosecutorial policy: 1) had a discriminatory effect and 2) was motivated by a discriminatory purpose. Id. at 465-66 (quotations omitted). In order to demonstrate a discriminatory effect in a race case, the defendant must "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not." Id. at 469. This is the rigorous standard the Court applied when considering Defendant's Motion for Discovery. In order to establish a discriminatory effect, defendant needed to produce some evidence that similarly-situated individuals of another race could have been, but were not, targeted for phony stash house robberies in the Eastern District of Pennsylvania. Because he failed to do so, inter alia, the Court denied the Motion.

In support of his argument that a less rigorous standard applies, Defendant relies on two cases from outside the Third Circuit. First, he cites to United States v. Jones, 159 F.3d 969 (6th Cir. 1998), a case in which the Sixth Circuit reversed the district court's denial of an African American defendant's discovery motion in aid of a selective prosecution claim. In doing so, the Court of Appeals found that the defendant presented evidence of outrageous police conduct that demonstrated that the police intentionally targeted him because of his race. Id. at 977. To satisfy the discriminatory effect prong, the defendant presented evidence that law enforcement only referred him and his co-defendant for federal prosecution and declined to refer eight non-African Americans who were also arrested. Id. at 978. The Sixth Circuit found that the defendant "set forth 'some evidence' tending to show the existence of discriminatory effect that warrant[ed] discovery on his selective prosecution claim." Id. (quoting Armstrong, 517 U.S. at 468).

Jones is dissimilar from the case at hand for two reasons. First, the defendant in Jones successfully demonstrated discriminatory intent on the part of the police. Here, as noted in the Court's prior Opinion, Defendant Washington failed to establish that the Government's use of fictitious stash house sting operations is motivated by a discriminatory purpose. United States v. Washington, No. 13-cr-171-2, 2014 WL 2959493, *7 (E.D. Pa. June 30, 2014). In his present Motion, Defendant has not presented any new evidence which would warrant reconsideration of this finding. Instead, he contends that "[i]f the A.T.F. and United States Attorney's Office only target minority neighborhoods using minority informants, then their potential targets will be a large percentage of minority defendants, if not all minority defendants." (Doc. No. 147 at 8.) However, Defendant has failed to present any evidence that Government agents in the Eastern District of Pennsylvania conduct these sting operations in the manner he describes.

Second, the defendant in Jones presented "some evidence" of a discriminatory effect by showing that a specific group of eight non-African Americans were not referred for federal prosecution like he was. Defendant Washington has not produced similar evidence in this case. In support of his Motion for Discovery, he pointed to the fact that since 2009, the Government has brought at least four phony stash house robbery cases in this district, in which only African Americans were charged. (Doc. No. 126 at ¶ 5.) He also submitted numerous pro se filings which included various news articles discussing the Government's use of these types of sting operations across the country, filings in phony stash house robbery cases from outside the Third Circuit, and

3

APP 24

Case 2:13-cr-00171-JHS   Document 149   Filed 08/07/14   Page 4 of 5

Department of Justice policy guidelines regarding the impermissibility of racial profiling by federal law enforcement agencies. (Doc. Nos. 121, 134.) Presently, Defendant cites to a recent analysis by <u>USA Today</u> which revealed that out of 635 phony stash house defendants, 91% were minorities, primarily African American and Hispanic. (Doc. No. 147 at 14.) Contrary to Defendant's beliefs, this is not "some evidence" of a discriminatory effect as defined by the Supreme Court. As this Court already noted in its prior Opinion regarding phony stash house prosecutions in this district, these "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." <u>Id.</u> at *6 (quoting <u>United States v. Bass</u>, 536 U.S. 862, 864 (2002)). Furthermore, news articles about the way these sting operations are conducted in other major cities have no bearing on Defendant's claims regarding alleged selective prosecutions in the Eastern District of Pennsylvania.

In his present Motion, Defendant also mistakenly relies on <u>United States v. James</u>, 257 F.3d 1173 (10th Cir. 2001), another case in which an African American defendant challenged the district court's denial of his motion for discovery in aid of a selective prosecution claim. In finding that the defendant failed to produce some evidence tending to show a discriminatory effect, the Tenth Circuit explained:

> Of course, a defendant cannot satisfy the discriminatory effect prong by providing statistical evidence which simply shows that the challenged government action tends to affect one particular group. Rather, the proffered statistics must address the critical issue of whether that particular group was treated differently than a similarly-situated group.

<u>Id.</u> at 1179. As the Court previously noted in its June 30, 2014 Opinion, that is precisely what Defendant Washington has done here. The fact that the Government has only charged African American defendants in at least four phony stash house robbery cases in this district since 2009 does not establish that similarly situated whites were not targeted in the initial sting operations. Therefore, Defendant is not entitled to discovery on his selective prosecution claim.

The Court is equally unpersuaded by Defendant's two remaining arguments. Specifically, Defendant incorrectly asserts that the Court somehow waived his right to counsel when it considered his pro se filings in support of his Motion for Discovery. (Doc. No. 137 at 10.) When Defendant first submitted these documents, he specifically requested that the Court put these materials on the docket and review them in connection with his "pending and future motion to dismiss [the] indictment for selective prosecution and racial profiling." (Doc. No. 121 at 1.) Similarly, in his counseled Motion for Discovery, Defendant expressly incorporated his pro se letter and exhibits as additional support for the Motion. (Doc. No. 126 at 1.) As requested, the Court considered these documents when rendering its Opinion on Defendant's Motion for Discovery. The Court also notes that only Defendant can waive his Sixth Amendment right to counsel, and he has not done so in this case. Despite the fact that Defendant has submitted numerous documents on his own, the Court has never construed these filings as a waiver of Defendant's right to counsel. Therefore, this argument is also without merit.

4

App 25

Case 2:13-cr-00171-JHS   Document 149   Filed 08/07/14   Page 5 of 5

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

---

Finally, Defendant contends that the Court inappropriately re-characterized his underlying selective prosecution claim.  (Doc. No. 137 at 14.)  In its prior Opinion, the Court noted as follows:

> While Defendant refers to "selective prosecution" in his Motion, he actually complains of racial profiling or "selective law enforcement."  However, "the same analysis governs both types of claims: a defendant seeking discovery on a selective enforcement claim must meet the same 'ordinary equal protection standards' that Armstrong outlines for selective prosecution claims."  United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002).

Washington, 2014 WL 2959493 at *3 n.2.  In the present Motion for Reconsideration, Defendant challenges the Court's characterization of his "selective prosecution" claim as a "selective enforcement" claim.  Because the same analysis governs both types of claims, the Court would have reached the same result regardless of how the claim was cast.  Therefore, Defendant's final argument is without merit.  For this reason, and all those listed above, Defendant's Motion for Reconsideration will be denied.

