**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

**NO. 16-2795**

---

UNITED STATES OF AMERICA

v.

ASKIA WASHINGTON
a/k/a    SKI

Appellant

---

REPLY BRIEF OF APPELLANT

---

Appeal from the Judgement of Sentence entered on June 13, 2016 by the United States District Court for the Eastern District of Pennsylvania, Criminal No. 13-cr-00171-002.

---

BY: MARK S. GREENBERG, ESQUIRE
920 Lenmar Drive
Blue Bell, Pennsylvania 19422
(267) 253-7933
**ATTORNEY FOR APPELLANT**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CERTIFICATION OF BAR MEMBERSHIP

CERTIFICATION OF WORD COUNT

CERTIFICATION OF IDENTICAL COMPLIANCE OF E-BRIEF
AND HARD COPY OF BRIEF

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

United States v. Alcaraz-Arellano, 441 F.3d 1252, 1262 (10th Cir. 2006) ...................................1

United States v. Armstrong, 517 U.S. 456 (1996).......................................................................1, 5

United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002) ..................................................1, 4

United States v. Davis, 793 F.3d 712 (7th Cir. 2015) (en banc) .................................................1, 4

United States v. Hare, 820 F.3d 93, 100 (4th Cir. 2016) ...........................................................5-6

United States v. McLean , 2016 WL 4179669 (E.D. Pa. Aug 8, 2016) ...................................9, 10

Whren v. United States, 517 U.S. 806, 813 (1996) .......................................................................3

**MISCL.**

Model Criminal Jury Instructions Third Circuit, Nos. 1.14 & 3.12 ..............................................8

**ARGUMENT**

**United States v. Davis, 793 F.3d 712 (7th Cir. 2015) (en banc) provides the proper framework for analyzing Washington's selective enforcement claim.**

The government argues that the analytical framework set forth in United States v. Armstrong, 517 U.S. 456 (1996), which involved a selective prosecution claim, applies to the totality of Washington's discovery requests because (1) Washington originally styled his discovery motion in the District Court as one involving "racial profiling/selective prosecution" and (2) Washington's motion "seek[s] materials obviously related to the prosecution of crimes." Brief of Appellee at 25-26.

The label Washington used to style his original discovery motion didn't confuse the District Court[1]. Based on the nature of the discovery that Washington requested in his original motion, the District Court recognized that Washington was prosecuting a "selective enforcement" claim and not a "selective prosecution" claim. App. 13 n. 2. Washington reiterated the nature of his claim as one involving selective enforcement when he styled his motion for reconsideration as one seeking documents ". . . .Supporting Racial & Selective Enforcement." Supp. App. 0221. The body of Washington's motion for reconsideration included the following passage:

---

[1]Washington is not alone in errantly placing a "selective prosecution" label on a case actually involving a "selective enforcement" claim. See e.g., United States v. Alcaraz-Arellano, 441 F.3d 1252, 1262 (10th Cir. 2006) (defendant's motion styled as a motion regarding selective prosecution "is in fact a motion regarding selective enforcement [because it] challenges the decision and actions of the law enforcement officer, not the exercise of discretion by the prosecutor"); United States v. Barlow, 310 F.3d 1007, 1010 (7th Cir. 2002) (noting that defendant was complaining not of selective prosecution, "but of racial profiling [by the DEA], a selective law enforcement tactic").

> Defendant submits that further discovery will allow the Court to determine whether the vague rules issued on such sting operations may authorize and even encourage arbitrary and discriminatory enforcement, by failing to establish minimal guidelines to govern enforcement.

Supp. App. 0225. Thus, even if Washington's motions implicated additional claims of selective prosecution, there is no doubt that District Court understood that he was making a selective enforcement claim as well. The District Court held, however, that both claims were governed by an Armstrong analysis.

The government proffers that all of Washington's discovery requests implicate "materials obviously related to the prosecution of crimes" and, therefore, should be examined under the Armstrong selective prosecution standard. Brief of Appellee at 26. The government is wrong. Washington agrees that a portion of his discovery requests implicate considerations of prosecutorial discretion, which would be subject to an Armstrong analysis. But Washington's discovery motion also includes, as the government implicitly concedes, requests for discovery that do not implicate prosecutorial discretion. For example, the District Court, in its opinion denying the motion for discovery, set forth the nine discovery requests Washington made in his original motion. App. 12-13.Washington, in this Court, has pruned this number to seven which, in his view, does not implicate matters involving prosecutorial discretion. Brief of Appellant at 31-32. The government, in its brief, identifies four of Washington's discovery requests that it views as requesting "materials relating to prosecutorial decision-making[.]" Brief of Appellee at 27-28. By implication, then, five of Washington's discovery requests do not, in the government's eyes, implicate "materials relating to prosecutorial decision-making[.]" [2]

---

[2]It should also be noted that Washington's original discovery motion in the District Court requested "any decision by any federal agency, the Justice Department or the White House to

The government argues that <u>Armstrong</u> applies to both a claim of selective enforcement and a claim selective prosecution "because investigative considerations and prosecutorial considerations tend to intertwine. . . and frequently agents and prosecutors consult during the course of an investigation, long before the final decision on seeking a criminal complaint or indictment is made." Brief of Appellee at 36. Different standards of discovery for the two claims, the government posits, "would be artificial, unwarranted, and generally unworkable." Id. at 37.

The government's concerns are overwrought. Washington seeks discovery on whether the ATF engaged in racial discrimination at the inception of the investigation, not on the subsequent collaborative process between prosecutor and agent that takes place during the course of the investigation. To some degree, Washington's discovery request could implicate the ultimate decision by the prosecutor to dismiss the indictment. If it turns out that Washington's discovery request reveals that he was, in fact, racially profiled by the ATF in violation of the Constitution, the U.S. Attorney's Office would move to withdraw the indictment for reasons having nothing to do with prosecutorial discretion and everything to do with constitutional mandate. The U.S. Attorney doesn't have the "discretion" to prosecute someone who has been racially profiled by a law enforcement agency in violation of the Constitution. <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996) ("Constitution prohibits selective enforcement of the law based on considerations such as race" ). Rather, if the District Court concludes, after considering the materials disclosed

---

authorize ATF or any other federal law enforcement agency to pursue such cases . . . ." App. 12, bullet point #3. This particular request was excised from the materials Washington identified for this Court in his brief as not implicating prosecutorial discretion. See Brief of Appellant at 31, 3rd bullet point ellipsis. The government nonetheless included, in *italics*, this ersatz provision in its brief as an example of materials "still implicating prosecutorial decisions." Brief of Appellee at 27. Washington agrees that this particular provision could conceivably implicate prosecutorial decisions; hence, its removal by Washington in his brief.

in Washington's selective enforcement discovery request, that the AFT racially profiled him in violation of the Constitution, the prosecutor in this case would have no choice (and no discretion) but to dismiss the indictment. If the prosecutor disagreed with the determination of the District Court, he/she could file an appeal. On the other, if the prosecutor agreed with the decision of the District Court, he/she undoubtedly would embrace the dismissal so as to forego being a party to matter involving unlawful racial profiling. Either way, there is no exercise of prosecutorial "discretion" save for the decision to appeal which the discovery request obviously does not implicate.

This begs the question, then: does <u>Armstrong</u> apply to a selective enforcement claim? The District Court answered in the affirmative and cited the decision of the Seventh Circuit in <u>United States v. Barlow</u>, 310 F.3d 1007, 1010 (7th Cir. 2002) as authority in support of its position. App. 13-14 n. 2. But as acknowledged by the government[3] and analyzed in the Washington's principal brief[4], <u>Barlow</u> was implicitly overruled by the Seventh Circuit's *en banc* decision in <u>United States v. Davis</u>, 793 F.3d 712 (7th Cir. 2015) (en banc) which held that <u>Armstrong</u> does not apply to a selective enforcement claim, in part, because the presumption of regularity underlying prosecutorial charging decisions do not apply to a law enforcement agency's initial investigation of those charges. <u>Id</u>. at 720-21.

To be fair, the District Court did not have the benefit of the <u>Davis</u> opinion when it ruled against Washington. Nonetheless, the government maintains that the <u>Davis</u> court erred and that <u>Barlow</u> was correctly decided. Brief of Appellee at 39 n. 13. As both the government and the

---

[3]Brief of Appellee at 39 n. 13.

[4]Brief of Appellant at 23-25; 32-33.

4

District Court note, <u>Armstrong</u> requires a selective prosecution claimant to demonstrate that the federal prosecutorial policy had (1) a discriminatory effect and was (2) motivated by a discriminatory purpose. <u>Armstrong</u>, 517 U.S. at 465. With respect to the discriminatory effect element, the claimant must make a "credible showing" that similarly situated defendants of other races could have been prosecuted but were not. <u>Id</u>. at 469-470. The Court went on to dismiss the selective prosecution discovery request by the African American defendants charged with crack offenses on the grounds that they failed to show that similarly situated white individuals who were known to federal prosecutors could have been prosecuted in federal court but were not. <u>Id</u>. at 470.

But there is an important difference between a selective prosecution claim and a selective enforcement claim with respect to the actual existence of records available to prove discriminatory effect. In a selective prosecution claim, there are records which exist for the claimant to examine in his/her effort to show that similarly situated persons were treated differently. In <u>Armstrong</u>, for example, the Court noted that the African American claimants could have identified the race of crack defendants in California state court by reviewing state court records in their effort to show that federal prosecutors nonetheless elected not to prosecute similarly situated white individuals in federal court even though the prosecutors knew of their existence . <u>Id</u>.

By contrast, it is virtually impossible for a selective enforcement claimant to obtain evidence regarding similarly situated persons in an effort to demonstrate a discriminatory effect "as there are less likely to be records of similarly situated individuals who were never investigated or arrested." <u>United States v. Hare</u>, 820 F.3d 93, 100 (4th Cir. 2016).

5

In the stash house sting context, a defendant would face considerable difficulty obtaining credible evidence of similarly situated individuals who were <u>not</u> investigated by ATF. Even if a defendant could, for example, use state or federal prosecutions to identify white individuals involved in drug offenses or armed robberies, without discovery into what ATF knew about these individuals, the defendant would be hard pressed to demonstrate that there were no distinguishing factors that would justify different enforcement treatment.

<u>Id</u>. at 101 (emphasis supplied).

Applying <u>Armstrong</u> to the case at bar would require Washington to prove a negative—that similarly situated white individuals prepared to rob a stash house were not investigated by ATF even though ATF knew of their existence. Indeed, no record of this non-event would exist since ATF would not memorialize it in writing. <u>Davis</u> addresses this quandary by balancing <u>Armstrong</u>'s deference to the prosecutorial decision making process with the selective enforcement claimant's ability to show that he was unlawfully targeted by law enforcement because of his race. Because most of the discovery materials requested by Washington do not implicate prosecutorial discretion, the case should be remanded with instructions that the government supply the appropriate discovery materials so the District Court can examine the materials in "measured steps." If the initial inquiry gives the District Court reason to think that similarly situated suspects would not have been offered the opportunity to participate in a stash-house robbery because of their race, the District Court should continue its examination of the discovery until it is able to make a final determination of whether Washington, as an African American, was targeted because of his race.

**Trial counsel's blunder in eliciting Washington's drug conviction was prejudicial at least as to the title 21 drug counts (Three & Four).**

In arguing that trial counsel was not ineffective for eliciting Washington's prior drug conviction, the government opines "[a]s the district court found, there was overwhelming

6

evidence of Washington's guilt." Brief of Appellee at 47. But there are two sets of discreet criminal offenses that trial counsel's blunder implicated: the Hobbs Act robbery counts (One and Two) and the title 21 drug counts (Three and Four). While it might be debatable whether or not the evidence was "overwhelming" on the Hobbs Act robbery counts, it certainly was not overwhelming with respect to the title 21 drug offenses; not when the Court considers Washington's acquittal of the section 924( c) firearm count and his exclamation captured on tape that he "don't fuck with coke." App. 30.

Count Three of the superseding indictment charged Washington with conspiracy to possess with intent to distribute five kilograms or more of cocaine. Count Four charged Washington with attempted possession with the intent to distribute[5] five kilograms or more of cocaine. App. 65-66. In an effort to show that trial counsel's blunder in eliciting Washington's drug conviction did not prejudice him, the government cites that portion of the District Court opinion cataloguing the evidence against Washington. Brief of Appellee at 47-48 *citing* App. 29-30. This evidence, however, pertains almost exclusively to the Hobbs Act robbery offenses and not the title 21 drug offenses. With respect to counts Three and Four, the sum and substance of the evidence against Washington referenced by the government was set forth in the in the District Court's opinion as follows:

> During the {March 4} meeting, the UC explained to Berry, Washington, and the unknown man that they will have to be divide [sic] the kilograms of cocaine for distribution after the intended home invasion robbery. The UC explained that he "can't take the cocaine to NY." Washington agreed stating, "Yeah you can't take the shit back." *Washington offered to help sell the UC's portion of the stolen cocaine, stating, "So what, you want it sold or what...?" "I can't get it moved yo, but I don't like fucking with n-----rs." "See I don't fuck with coke."*..."They got to be somebody I really trust. Like all

---

[5]And aiding and abetting.

right buy this jawn I just came up on." "Buy this jawn real quick so...you can most likely, you can get your shit out before you leave. You know what I'm saying?" As the conversation ended, Berry told the UC that "it's gonna get done," referring to the home invasion robbery. Berry added, "However it go down, that shit's gotta go down." Washington agreed and added..."I know we can do it. That shit sounds super sweet."

App. 30 (emphasis supplied). Even on the day of the robbery, reference by the agents and the co-defendants to the existence and quantity of cocaine was almost incidental. See App. 31-32.

The jury evidently took seriously its duty to consider the evidence separately with respect to each individual count as required by this Court. See Model Criminal Jury Instructions Third Circuit, Nos. 1.14 & 3.12 ("[Jury's] decision on one offense, whether guilty or not guilty, should not influence [its] decision on any of the other offenses charged. Each offense should be considered separately"). In deciding whether there was a reasonable probability that the result of this proceeding would have been different but for trial counsel's blunder, this Court should likewise consider the evidence presented at trial in the context of the discreet criminal offenses charged. Even assuming, without conceding, that the evidence on the Hobbs Act robbery counts was "overwhelming," it does not follow that the evidence on the title 21 drug counts was likewise "overwhelming." If this were the case, the evidence recited by both the District Court and the government would  have been viewed by the jury as  "overwhelming" with respect to the section 924( c) count; yet Washington was acquitted of that count. It bears repeating that trial counsel's elicitation of Washington's drug conviction directly implicated his propensity to commit the title 21 drug offenses, not the Hobbs Act robbery offenses. As analyzed in the principal brief[6], trial counsel did not need to elicit Washington's prior drug conviction to demonstrate the ATF agents' non-compliance with the ATF manual governing the investigation

---

[6]Brief of Appellant at 34-35.

of stash house robbery cases. Given the paucity of the evidence on the title 21 drug offenses and Washington's acquittal of the section 924( c) count, there is a "reasonable probability" that the jury's verdict on counts Three and Four would have been different. Accordingly, even if the Court agrees with the government that Washington was not prejudiced by trial counsel's blunder on counts One and Two, it must remand for a new trial on counts Three and Four.

**The District Court was not "bound" to impose an enhanced 20-year mandatory minimum sentence that violated due process.**

The government argues that the decision in United States v. McLean , 2016 WL 4179669 (E.D. Pa. Aug 8, 2016)[7], where the district court  rejected imposition of the enhanced twenty-year mandatory minimum on due process grounds[8], and instead applied the ten-year mandatory minimum, has "no weight in this appeal." Brief of Appellee at 57. The government further argues that Washington is likewise not entitled to relief  because the District Court sentenced him to 22 years' incarceration; a sentence which was above the twenty-year mandatory minimum and below the 360 month-to-life guideline rage. Id. While McLean is concededly not binding on this Court, it is persuasive on whether the District Court was correct in holding that it was "bound" to impose the enhanced twenty-year mandatory minimum sentence on the title 21 drug counts (Three and Four).

---

[7]There were two separate opinions in McLean. The opinion examined by the government, 85 F. Supp. 3d 825 (E.D. Pa. 2015) addressed pre-trial and trial issues, not the due process sentencing issue.

[8]After McLean filed notice of appeal in the district court (captioned in this Court at 16-2993), the government filed a cross-appeal captioned at 16-3227. That appeal—16-3227—was voluntarily dismissed on September 15, 2016 by Order of the Clerk of this Court pursuant to Fed. R. App. 42(b). McLean's original appeal is still pending in this Court.

In <u>McLean</u>, the defendant, like Washington, was a career offender with a corresponding guideline range 360 months-to-life. <u>United States v. McLean</u>, No. 2016 WL 4179669, at *13, n. 18 (E.D. Pa. Aug. 8, 2016). The district court concluded, however, that McLean's career offender designation overstated the seriousness of his criminal history. <u>Id</u>. The district court calculated McLean's sentencing guideline range to be 135-168 months on the drug count, which took into account that (1) McLean's career offender designation overstated the seriousness of his criminal history and (2) the court's decision to disregard the enhanced twenty-year mandatory minimum on due process grounds[9]. <u>Id</u> at *13. The district court ultimately sentenced McLean to a total sentence of 19 years' incarceration: fourteen years on the count charging conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine, and a consecutive five years' incarceration on the section 924( c) count[10].

As analyzed in the principal brief, the District Court was not "bound" to impose an enhanced twenty-year mandatory minimum on counts Three and Four that violated due process. Brief of Appellant at 41-42. If imposition in this case of the enhanced twenty-year mandatory minimum sentence violated due process, a sentence of 22 years is not saved simply because it was higher than the enhanced mandatory minimum. Indeed, there is no indication that the District Court would not have considered a sentence below twenty-years if it felt it had the opportunity to do so. See Supp. Appx. 210-218. Had the mandatory minimum sentence in this case been ten

---

[9]Which had the further effect of reducing the guideline offense level by two levels by reducing the amount of cocaine from five kilograms to 3.5 kilograms.

[10]The government incorrectly stated in its brief that McLean received a total sentence of 14 years' incarceration. Brief of Appellee at 57. Washington made the same mistake. Brief of Appellant at 41. The total sentence was 19 years' incarceration, as indicated above.

rather than twenty years, Washington could have argued for a downward variance below his guideline range of 360 months-to-life and, indeed, below twenty-years. Washington could not make this argument at sentencing because the District Court erroneously concluded that it was "bound" to impose the enhanced mandatory minimum. Accordingly, if the Court does not grant a new trial on counts Three and Four, the matter should be remanded for re-sentencing on these two counts.

Respectfully submitted,

/s/ Mark S. Greenberg

_____
MARK S. GREENBERG, ESQUIRE
Attorney for Appellant

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


UNITED STATES OF AMERICA          : :

    v.          : :          DOCKET NO. 16-2795

ASKIA WASHINGTON a/k/a SKI    (Appellant)

## **CERTIFICATIONS**

1.    <u>CERTIFICATE OF BAR MEMBERSHIP</u>

    Counsel for Appellant certifies that he is a member of the bar of this Court.

2.    <u>IDENTICAL COMPLIANCE OF E-BRIEF AND HARD COPY OF BRIEF</u>

    Counsel for Appellant certifies that the text of the E-brief and the hard copies of the brief are identical.

3.    <u>VIRUS SCAN CERTIFICATION</u>

    Counsel for Appellant certifies that a virus scan was performed using Microsoft 10 AntiVirus Scan.

4.    <u>WORD COUNT CERTIFICATION</u>

    Counsel for Appellant certifies that there are less than 6,500 words in the instant reply brief.

5.    <u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that a true and correct copy of the Reply Brief for Appellant was served upon:

Eric Henson, Esquire
Assistant U.S. Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

by ECF-filing on the date below.

                                     /S/Mark Greenberg
                                     MARK S. GREENBERG, ESQUIRE
                                     Attorney for Appellant

DATED: December 7, 2016