IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | |
| | : : | |
| v. | : : | |
| | : : | |
| ASKIA WASHINGTON | | |
|     a/k/a SKI   (Appellant) | : : | DOCKET NO. 16-2795 |
| | : : | |
| | : : | |

**<u>Petition for Rehearing *En Banc* Pursuant to Fed. R. App. P. 35 and/or for Panel Rehearing Pursuant to Fed. R. App. 40</u>**

Petitioner ASKIA WASHINGTON requests that the Court grant the instant Petition for Rehearing *En Banc* Pursuant to Fed. R. App. P. 35 and/or for Panel Rehearing Pursuant to Rule 40 and in support thereof respectfully submits the following:

**BACKGROUND**

This case involves a stash house robbery sting of 10-kilograms of fictitious cocaine orchestrated by the Bureau of Alcohol, Tobacco and Firearms ("ATF") in Philadelphia. At the time of the sting, a kilogram of cocaine in Philadelphia sold for $40,000. Appellant Washington, who was not the original target of the sting, took the bait and agreed to participate in the robbery. Washington's poor decision making was spurred on by the fictitious $400,000 pot that ATF had placed at the

end of this fanciful rainbow.

Washington went to trial on two Hobbs Act robbery offenses, which carried no mandatory minimum sentence exposure, two title-21 drug offenses, which carried an enhanced 20-year mandatory minimum sentence exposure[1], and two firearm offenses. At trial, a jury convicted Washington of the Hobbs Act and title-21 drug counts, and acquitted him of the section 924 (c) firearm count, resulting in the government withdrawing a felon in possession count. Over objection, the District Court sentenced Washington to a mandatory minimum sentence of 20 years' incarceration on the title-21 drug counts consecutive to two years' incarceration on the Hobbs Act counts.

Washington, who is African-American, raised three issues in this Court. Washington first complained that the District Court erred in applying the stringent *Armstrong/Bass*[2] standard to his "selective enforcement" discovery motion in which he claimed that he had been unlawfully targeted by ATF because of his race. Washington urged the Court to apply the more liberal standard for a "selective enforcement" discovery review announced in United States v. Davis, 793

---

[1] Washington had a prior conviction for a drug offense which increased the mandatory minimum sentence from ten to 20 years.

[2] United States v. Armstrong, 517 U.S. 456 (1996) and United States v. Bass, 536 U.S. 862 (2002).

F.3d 712 (7th Cir. 2015) (*en banc*).

The second issue raised by Washington alleged that his trial attorney rendered ineffective assistance in opening the door to the admission of Washington's prior drug conviction at trial which, in Washington's view, showed only that he had a propensity to commit drug offenses like the ones for which he stood trial.

The third issue, and the subject of the instant motion, involves a due process challenge to the imposition of the 20-year mandatory minimum sentence in his case. Washington argued, in part, that "to allow the Government to increase a defendant's sentencing exposure as dramatically as it has in this case and to manipulate the amount of [fictitious] cocaine to attain that mandatory minimum . . . provides the Government with unbridled discretion to manipulate sentences and was not envisioned by Congress to warrant a doubling of the mandatory minimum sentence."

The Panel disposed of the first two issues in a 65-page precedential opinion authored by Judge Fuentes and joined by Judges Cowan and McKee. The Panel agreed with Washington that the District Court erred in applying the *Armstrong/Bass* standard in reviewing Washington's "selective enforcement" discovery claim. The Court ordered a limited remand for the District Court to

review Washington's "selective enforcement" discovery request under an analytical framework more relaxed than *Armstrong/Bass*. On the other hand, the Panel disagreed with Washington on the ineffective of counsel claim for reasons unnecessary for consideration of the instant motion.

At issue in this motion is the Panel's disposition of Washington's due process challenge to the imposition of the 20-year mandatory minimum sentence which the District Court concluded it was "bound" to impose. The Panel upheld imposition of the 20 year mandatory minimum sentence in a split, 2-1 decision joined by Judges Fuentes and Cowan. Judge McKee issued a 21-page dissenting opinion in which he thoughtfully discusses why, in Washington's view, this Court should grant *en banc* consideration of Washington's challenge to the 20-year mandatory minimum sentence[3].

**REHEARING *EN BANC* PURSUANT TO RULE 35**

Before moving to the substance of this motion, I express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance, i.e., whether due process is violated by the imposition of a mandatory minimum sentence of 20-years in a stash house robbery sting where

---

[3] The Panel ruled that the limited remand on the discovery issue did not affect the judgment of conviction or sentence.

there is no indication that Washington had the intent or capacity to carry out the plot but for the unholy ATF inducement; no actual drugs existed; ATF had unbridled discretion to select the type and quantity of the fictitious drugs; and there is no indication that Congress envisioned application of these "draconian" mandatory sentences to stash house stings.

The imposition of a 20-year mandatory minimum sentence in this type of case implicates fundamental issues involving due process, congressional intent underlying mandatory minimum sentences and judicial sentencing policy that can only be fully explored and addressed by the collective wisdom of this Court *en banc*; particularly where the Panel was split on the issue. Judge McKee's thoughtful analysis of these issues, and their application to the specific facts of this case, deserve the full consideration by this Court *en banc*.

Stash house robbery stings play Russian roulette with due process violations and are fraught with racial and socio-economic overtones. The majority reiterated this Court's past "misgivings . . . about the wisdom and viability of reverse stash house stings" and warned that even though Washington's case ". . . fell on the safe side of the due process divide, [this] should not be taken to indicate that all such

prosecutions will share the same fate." Opinion at 42[4]. Judge Mckee, by contrast, concluded that Washington's mandatory minimum sentence fell on the "[un]safe side of the due process divide." Given these contrary conclusions of a sentencing issue that literally implicates decades in the life of an individual, an *en banc* Court should weigh in on which side of the due process divide this case falls.

Allegations of racial and socio-economic bias are endemic to stash house robbery stings. These stings serve as a perverse inducement to people of color to commit crimes that they would not otherwise dream of committing but for the unholy contrivance of the ATF for a big payday. Whether in our Circuit, as demonstrated by the remand of this case, the Fourth Circuit[5] the Seventh Circuit[6] or the Ninth Circuit[7], to name of few, courts are troubled with the reality that virtually all of the defendants caught up in these contrived stash house robbery cases are people of color. That these stings target the poor, with potential

---

[4] Judge Ambro too, as noted by the Panel, has written: "I do not find it impossible for the Government to exercise its discretion rationally to set up stash house reverse stings. But I share the concern that this practice, if not properly checked, eventually will find itself on the wrong side of the line." United States v. Dennis, 826 F.3d 683, 699 (3d Cir. 2016) (Ambro, J., concurring in part and dissenting in part).

[5] United States v. Hare, 820 F.3d 93 (4th Cir. 2016).

[6] United States v. Davis, 793 F.3d 712 (7th Cir. 2015) (*en banc*).

[7] United States v. Briggs, 623 F.3d 724 (9th Cir. 2010).

$400,000 paydays like the one that lured Washington into this contrived scheme, only serve to provide an "extraordinary inducement" for the less fortunate to "do everything possible to earn the promised reward." Dissenting Opinion at 3.

It is true that Washington ultimately agreed to participate in the contrived robbery. Even Judge McKee found some of Washington's ideas "disturbingly violent." Id. at 3. But Washington was a secondary target in this investigation who had no experience either in stash house robberies or in moving large quantities of cocaine. Indeed, Washington exclaimed in one of the recorded conversations that "I don't fuck with coke" and was heard saying that he didn't "really do this," which the undercover agent took to mean home invasion robberies. As Judge McKee succinctly summarized,

> . . . the Government created a criminal scheme that would not have otherwise existed. Washington had no prior history of stash-house robberies (or violent crimes generally, for that matter), and he expressed reluctance to get involved with cocaine. Thus, here, as in similar cases, there is a strong possibility that had Washington not been "fooled into conspiring and attempting to steal fictitious drugs," he may well not have been sucked back into the criminal justice system.

Dissenting Opinion at 4.

The unbridled discretion that the ATF has in selecting the drug type and quantity to use in the sting implicates due process concerns. Washington would not have faced a mandatory minimum sentence had the contrived amount been less than 500 grams of fictitious cocaine. Because of a prior drug conviction,

7

Washington would have faced a mandatory minimum of ten years had the fictitious quantity been over 500 grams but less that five kilograms of cocaine. 21 U.S.C. § 841 (b) (1)(B)(ii). Only because ATF selected a quantity over five kilograms (ten in this case) did Washington face a mandatory minimum sentence of twenty years. Had the drug of choice in this sting been marijuana, Washington would have faced a mandatory minimum sentence of twenty years only if the quantity of marijuana had been 1000 kilograms!

The ATF justified the 10-kilogram amount to make the scheme "credible." But Judge McKee saw the due process violation through the fog of this ostensible justification when he wrote: "Despite the Government's claim that the 10-kilogram quantity was only selected to make the scheme credible, nothing suggests that Washington was motivated by any knowledge of a specific drug quantity, nor is there any evidence of him having any involvement with stash-house robberies." <u>Dissenting Opinion</u> at 3. As Judge McKee noted, there was no relationship between the contrived 10-kilogram amount and Washington's capacity or intent to deal in that amount "but for the temptation of a big payday, a work of fiction spun out by government agents to persons vulnerable to such a ploy who would not otherwise have thought of doing such a robbery." <u>Dissenting Opinion</u> at 4 *quoting* <u>United States v. Black</u>, 733 F.3d 294, 303 (9th Cir. 2013).

Citing Reports to Congress by the United States Sentencing Commission, as

well as Legislative History, Judge McKee noted that "Congress intended for the 10-year mandatory minimum sentences to apply to "major traffickers," i.e., "manufacturers or the heads of organizations." The 5-year mandatory minimums were intended to apply to "serious traffickers," i.e., "managers of the retail level traffic ... in substantial street quantities." Dissenting Opinion at 14-15 (citations omitted). Judge McKee observed that the automatic imposition of a mandatory minimum sentence in a phony stash house robbery sting defeats Congressional intent that district courts impose sentences that are guided by the factors set forth in 18 U.S.C. § 3553 (a), and are "sufficient, but not greater the necessary, to comply with the purposes of [sentencing]⁸." Dissenting Opinion at 16. While this parsimony provision does not necessarily trump application of the mandatory minimum sentencing provisions of 21 U.S.C. § 841 (b), Judge McKee nevertheless found it difficult to believe that Congress intended that mandatory minimum sentences be

> "reflexively appl[ied] in stash-house cases where, as here, the defendant is not only a low-level 'drug' offender, but also became involved with non-existent drugs at the government's urging. . . [and] [t]here are no drugs that would otherwise endanger the community, and the criminal conspiracy probably would never have been hatched but for law enforcement's intervention and direction."

---

⁸Commonly referred to as the "parsimony provision."

Dissenting Opinion at 16-17.

In sum, mandatory minimum sentences in cases involving **real** drugs have been called "draconian." See United States v. Williams, 299 F.3d 250, 258 (3d Cir. 2002). In contrived stash house robbery cases where (1) there is no indication that the defendant has the intent or capacity to carry out the plot but for the unholy inducement, (2) no actual drugs exist, (3) the law enforcement agency has the unbridled discretion to select the type and quantity of the fictitious drugs sufficient to trigger mandatory minimums and (4) Congress did not envision application of these "draconian" sentences to stash house stings, imposition of the 20-year mandatory minimum sentence on Washington violated due process. Washington urges this Court to apply its collective *en banc* wisdom in deciding on which side of the due process divide this case falls.

## PANEL REHEARING PURSUANT TO RULE 40[9]

Just as the Panel was not bound by the insuperable *Armstrong/Bass* standard in addressing Washington's selective enforcement discovery claim, it should not be stymied by the equally daunting *Twigg*[10] outrageous government conduct standard in addressing Washington's due process sentencing claim. At bottom, the

---

[9] Washington incorporates his arguments made in the preceding section.

[10] United States v. Twigg, 588 F.2d 373 (3d Cir. 1978).

District Court in this case felt "bound" to apply the mandatory minimum provisions of 21 U.S.C. § 841 (b) notwithstanding expressing discomfiture in doing so. As the Majority noted, "[t]he District Court was clearly guided by the mandatory minimum term on the drug counts in crafting the overall sentence." Opinion at 33 n. 55. Thus, even though Washington was a career offender whose guideline range was not directly governed by the 10-kilogram drug quantity, the District Court very well may have gone below the 20-year mandatory minimum if it thought it had the authority to do so. The facts of this case call out for the Panel to reconsider its decision not to give the District Court the authority to sentence Washington below the mandatory minimum. Just as the District Court is not obligated to order discovery in connection with Washington's selective enforcement discovery claim, the District Court would not be obligated to sentence Washington below twenty years on the drug counts. On the other hand, if the District Court did impose a sub-twenty year sentence on the drug counts, this Court would still be able to review the sentence for substantive reasonableness—a win-win-win situation for Washington, the District Court and the government. Accordingly, Washington asks the Majority to adopt the standard set forth in United States v. Ciszkowski, 492 F.3d 1264, 1270 (11th Cir. 2007), a case quoted

by the majority[11], as the intellectual framework to break the mandatory minimum glass floor and remand for re-sentencing with instructions that the District Court is free to impose the same 20-year sentence or a lesser sentence on the drug counts.

Respectfully submitted,

/s/ Mark s. Greenberg

_____
MARK S. GREENBERG, ESQUIRE
Attorney for Petitioner

---

[11] Opinion at 35-36.

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : : | |
| | : : | |
| v. | : : | |
| | : : | |
| ASKIA WASHINGTON | | |
| a/k/a SKI   (Appellant) | : : | DOCKET NO. 16-2795 |
| | : : | |
| | : : | |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the attached Petition for Rehearing Pursuant to Fed. R. App. P. 35 & 40 was served upon AUSA Eric Henson, Assistant U.S. Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, PA 19106, by ECF, on the date below.


_____/s/_____
MARK S. GREENBERG, ESQUIRE
Attorney for Petitioner


DATED:  September 1, 2017